David M. Barkan (State Bar No. 160825)
  *barkan@fr.com*
Joshua M. Masur (State Bar No. 203510)
  *masur@fr.com*
Thomas B. Manuel (State Bar No. 254186)
  *manuel@fr.com*
FISH & RICHARDSON P.C.
500 Arguello Street
Suite 500
Redwood City, California 94063-1526
Telephone:  (650) 839-5070
Facsimile:  (650) 839-5071

Attorneys for Defendant and Counterclaimant
NETGEAR, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| RUCKUS WIRELESS, INC., a Delaware corporation,<br><br>　　　　*Plaintiff and Counterdefendant,*<br><br>　　v.<br><br>NETGEAR, INC., a Delaware corporation; and RAYSPAN CORPORATION, a Delaware corporation,<br><br>　　　　*Defendants and Counterclaimants.* | Case No. 3:08-cv-2310-PJH<br><br>**NETGEAR, INC.'S ANSWER AND COUNTERCLAIMS TO FIRST AMENDED COMPLAINT FOR PATENT INFRINGEMENT**<br><br>**DEMAND FOR JURY TRIAL** |

　　　　Defendant and Counterclaimant NETGEAR, Inc. ("NETGEAR"), by and through its attorneys, hereby answers Plaintiff and Counterdefendant RUCKUS Wireless, Inc.'s ("RUCKUS'") First Amended Complaint for Patent Infringement (the "Complaint"), filed on May 28, 2008.  Except as expressly admitted below, NETGEAR denies every allegation in RUCKUS' Complaint.  Any factual allegation below is admitted only as to the specific, admitted fact and not as to any purported conclusions, characterizations, implications, or speculations that arguably

follow from the admitted facts.  With respect to the specific grounds of allegation, NETGEAR responds with numbered paragraphs corresponding to the numbered paragraphs of the Complaint as follows:

1.  NETGEAR admits that this Court has subject matter jurisdiction over the instant matter, but denies the substance of the underlying allegations.

2.  NETGEAR admits that it is subject to personal jurisdiction in this District for purposes of this action.  NETGEAR lacks sufficient information to admit or deny the allegations regarding Defendant and Counterclaimant RAYSPAN Corporation ("RAYSPAN").  Except as expressly admitted, NETGEAR denies the allegations of paragraph 2.

3.  NETGEAR admits that venue is proper in this District, but denies that any acts of infringement involving NETGEAR products have occurred.  NETGEAR lacks sufficient information to admit or deny the allegations regarding RAYSPAN.  Except as expressly admitted, NETGEAR denies the allegations of paragraph 3.

4.  NETGEAR admits that this is an Intellectual Property action for purposes of the intradistrict assignment provisions of the Civil Local Rules.

5.  NETGEAR lacks knowledge or information sufficient to form a belief about the truth of the allegations of paragraph 5.

6.  NETGEAR lacks knowledge or information sufficient to form a belief about the truth of the allegations of paragraph 6.

7.  NETGEAR lacks knowledge or information sufficient to form a belief about the truth of the allegations of paragraph 7.

8.  NETGEAR lacks knowledge or information sufficient to form a belief about the truth of the allegations of paragraph 8.

9.  NETGEAR lacks knowledge or information sufficient to form a belief about the truth of the allegations of paragraph 9.

10.  NETGEAR lacks knowledge or information sufficient to form a belief about the truth of the allegations of paragraph 10.

1      11.    NETGEAR lacks knowledge or information sufficient to form a belief about the truth of the allegations of paragraph 11.

    12.    NETGEAR admits that it is a Delaware corporation, and that its principal place of business is located at 4500 Great America Parkway, Santa Clara, California.  NETGEAR further admits that it designs, develops, and markets branded network products that address the specific needs of small and medium business and home users, including wireless network products such as wireless routers.  Except as expressly admitted, NETGEAR denies the allegations of paragraph 12.

    13.    NETGEAR lacks knowledge or information sufficient to form a belief about the truth of the allegations of paragraph 13.

    14.    NETGEAR admits that it entered into a Technology License Agreement ("TLA") with RUCKUS on or about December 23, 2004.  NETGEAR further admits that under the TLA, NETGEAR agreed to pay a royalty for each NETGEAR WPN824 that incorporated RUCKUS' Licensed Technology.  NETGEAR further admits that the TLA defined such Licensed Technology, in relevant part, as RUCKUS' printed circuit board design for an 802.11 g/b wireless access point with multiple antenna on the peripheries of the PCB and circuitry for dynamic antenna control, along with RUCKUS' proprietary software.  Except as so expressly admitted, NETGEAR denies the allegations of paragraph 14.

    15.    NETGEAR admits that NETGEAR and Video54 previewed RangeMax technology at the 2005 Consumer Electronics Show in Las Vegas, Nevada, and that one or more press releases described RangeMax technology as "designed to boost wireless range in home networks and eliminate dead spots, vastly improving support for bandwidth-intensive applications such as streaming audio and video, playing online games and transferring large data files."  Except as so expressly admitted, NETGEAR denies the allegations of paragraph 15.

    16.    NETGEAR admits the allegations of paragraph 16.

    17.    NETGEAR admits that one or more press releases attributed the quoted language, in substantially verbatim form, to Patrick Lo.  Except as so expressly admitted, NETGEAR denies the

1  allegations of paragraph 17, including any implication that NETGEAR addressed any "pervasive
2  issues" solely by using "RUCKUS' technology."
3      18.   NETGEAR admits that one or more press releases attributed the quoted language, in
4  substantially verbatim form, to Vivek Pathela.  Except as so expressly admitted, NETGEAR denies
5  the allegations of paragraph 18, including the characterization of any NETGEAR router as
6  "RUCKUS powered."
7      19.   NETGEAR admits that it requested that RUCKUS develop cost-reduced versions of
8  the WPN824, and that RUCKUS developed one such cost-reduced version, the WPN824v2.
9  NETGEAR further admits that the WPN824 may be purchased from NETGEAR and from
10  resellers, but denies the implication that purchasers can specify a particular version of the product.
11  NETGEAR denies the allegation that the WPN824v2 may currently be purchased from NETGEAR
12  directly.  NETGEAR lacks knowledge or information sufficient to form a belief about whether one
13  or more NETGEAR resellers are still selling the WPN824v2, but denies the implication that the
14  WPN824v2 remains widely available.  Except as expressly admitted or denied, NETGEAR denies
15  the allegations of paragraph 19.
16      20.   NETGEAR admits that pursuant to the TLA, it has paid and continues to pay
17  royalties to RUCKUS on each and every WPN824v1 and WPN824v2 router, which are the only
18  WPN824 routers that incorporate RUCKUS Licensed Technology.
19      21.   NETGEAR admits that the FCC website suggests that information regarding
20  NETGEAR's certification request for the WPN824v3 was made publicly available on or about
21  October 31, 2007.  NETGEAR admits that RUCKUS was not and has not been involved in the
22  manufacture, design, or production of the WPN824v3.  Although NETGEAR denies that the TLA
23  contains no contractual obligation or license by and between RUCKUS and NETGEAR (or any
24  proxy thereof, including but not limited to RAYSPAN) that permits the incorporation of any
25  RUCKUS intellectual property in any NETGEAR WPN product other than the WPN824v1 and
26  WPN824v2, NETGEAR admits that the TLA does not permit the incorporation of RUCKUS
27  Licensed Technology in the WPN824v3; however, NETGEAR further denies that the WPN824v3
28

incorporates any RUCKUS Licensed Technology. Unless expressly admitted or denied, NETGEAR lacks knowledge or information sufficient to form a belief about the truth of the allegations of paragraph 21, including RUCKUS' awareness of the existence of the WPN824v3.

22. NETGEAR admits the allegations of paragraph 22.

23. NETGEAR admits that in or around early February 2008, Patrick Rada met socially with Selina Lo and William Kish of RUCKUS. NETGEAR further admits that during that social meeting, either or both Ms. Lo or Mr. Kish raised concerns that the WPN824v3 embodied certain RUCKUS intellectual property. Unless expressly admitted, NETGEAR denies the allegations of paragraph 23, including in particular that Mr. Rada told either or both Ms. Lo or Mr. Kish that NETGEAR was unaware of any RUCKUS patents.

24. NETGEAR admits that on or about February 12, 2008, Patrick Lo met with Selina Lo. NETGEAR further admits that Mr. Lo may have stated that NETGEAR would continue to sell the WPN824v2 until NETGEAR's inventory was exhausted, and would discontinue or already had discontinued the manufacture and sale of the WPN824v1 and WPN824v2 models. NETGEAR further admits that Mr. Lo stated that because the WPN824v3 does not incorporate RUCKUS Licensed Technology, NETGEAR would not pay RUCKUS royalties on the WPN824v3. Unless expressly admitted, NETGEAR denies the allegations of paragraph 24.

25. NETGEAR admits that it may rely on indemnification obligations of providers of components in its products, including the WPN824v3. NETGEAR further admits that it believes that RAYSPAN may have an indemnification obligation to NETGEAR. Unless expressly admitted, NETGEAR denies the allegations of paragraph 25, including in particular that "NETGEAR indicated that it had undertaken no due diligence with respect to any RUCKUS patents."

26. NETGEAR lacks knowledge or information sufficient to form a belief about the truth of the allegations of paragraph 26.

27. NETGEAR admits that paragraph 27 quotes from or paraphrases language from the '562 Patent, but denies that paragraph 27 accurately or completely describes the claims or disclosure of the '562 patent.

28. NETGEAR admits that paragraph 28 quotes from or paraphrases language from the '912 Patent, but denies that paragraph 28 accurately or completely describes the claims or disclosure of the '912 patent.

29. NETGEAR denies the allegations of paragraph 29.

30. NETGEAR denies the allegations of paragraph 30.

31. To the extent that the allegations of paragraph 31 are directed to NETGEAR products, NETGEAR denies the allegations of paragraph 31.  Except as so expressly denied, NETGEAR lacks knowledge or information sufficient to form a belief about the truth of the allegations of paragraph 31.

32. To the extent that the allegations of paragraph 32 are directed to NETGEAR products, NETGEAR denies the allegations of paragraph 32.  Except as so expressly denied, NETGEAR lacks knowledge or information sufficient to form a belief about the truth of the allegations of paragraph 32.

## COUNT I

33. NETGEAR repeats and incorporates by reference, as though fully set forth herein, its responses to paragraphs 1 through 32.

34. NETGEAR denies the allegations of paragraph 34.

35. NETGEAR denies the allegations of paragraph 35.

36. NETGEAR denies the allegations of paragraph 36.

37. NETGEAR denies the allegations of paragraph 37.

38. To the extent that the allegations of paragraph 38 are directed to NETGEAR products, NETGEAR denies the allegations of paragraph 38.  Except as so expressly denied, NETGEAR lacks knowledge or information sufficient to form a belief about the truth of the allegations of paragraph 38.

1  39. To the extent that the allegations of paragraph 39 are directed to NETGEAR products, NETGEAR denies the allegations of paragraph 39. Except as so expressly denied, NETGEAR lacks knowledge or information sufficient to form a belief about the truth of the allegations of paragraph 39.

40. To the extent that the allegations of paragraph 40 are directed to NETGEAR products, NETGEAR denies the allegations of paragraph 40. Except as so expressly denied, NETGEAR lacks knowledge or information sufficient to form a belief about the truth of the allegations of paragraph 40.

41. To the extent that the allegations of paragraph 41 are directed to NETGEAR products, NETGEAR denies the allegations of paragraph 41. Except as so expressly denied, NETGEAR lacks knowledge or information sufficient to form a belief about the truth of the allegations of paragraph 41.

## COUNT II

42. NETGEAR repeats and incorporates by reference, as though fully set forth herein, its responses to paragraphs 1 through 41.

43. NETGEAR denies the allegations of paragraph 43.

44. NETGEAR denies the allegations of paragraph 44.

45. NETGEAR denies the allegations of paragraph 45.

46. NETGEAR denies the allegations of paragraph 46.

47. To the extent that the allegations of paragraph 47 are directed to NETGEAR products, NETGEAR denies the allegations of paragraph 47. Except as so expressly denied, NETGEAR lacks knowledge or information sufficient to form a belief about the truth of the allegations of paragraph 47.

48. To the extent that the allegations of paragraph 48 are directed to NETGEAR products, NETGEAR denies the allegations of paragraph 48. Except as so expressly denied, NETGEAR lacks knowledge or information sufficient to form a belief about the truth of the allegations of paragraph 48.

49. To the extent that the allegations of paragraph 49 are directed to NETGEAR products, NETGEAR denies the allegations of paragraph 49. Except as so expressly denied, NETGEAR lacks knowledge or information sufficient to form a belief about the truth of the allegations of paragraph 49.

50. To the extent that the allegations of paragraph 50 are directed to NETGEAR products, NETGEAR denies the allegations of paragraph 50. Except as so expressly denied, NETGEAR lacks knowledge or information sufficient to form a belief about the truth of the allegations of paragraph 50.

**PRAYER FOR RELIEF**

51. WHEREFORE, NETGEAR denies that RUCKUS is entitled to the requested relief or any other relief.

**AFFIRMATIVE DEFENSES**

NETGEAR asserts the following affirmative defenses in response to RUCKUS' First Amended Complaint. NETGEAR reserves the right to allege additional affirmative defenses as they become known throughout the course of discovery.

**First Affirmative Defense**
**(Non-Infringement)**

52. NETGEAR has not infringed and does not currently infringe, either directly or indirectly, any claim of the Patents-in-Suit.

**Second Affirmative Defense**
**(Invalidity)**

53. Each of the Patents-in-Suit is invalid because it fails to satisfy the requirements of the Patent Act, 35 U.S.C. § 101, *et seq.*, including, without limitation, sections 101, 102, 103, and 112 thereof.

**Third Affirmative Defense**
**(Prosecution History Estoppel)**

54. RUCKUS is estopped, based on statements, representations, and admissions made during prosecution of the patent applications resulting in the Patents-in-Suit, from asserting any

interpretation of the claims of the Patents-in-Suit that would be broad enough to cover any of NETGEAR's products or services.

## COUNTERCLAIMS

NETGEAR, for its counterclaims against RUCKUS, states and alleges as follows:

### Nature of the Action

55.   This counterclaim seeks a declaratory judgment of non-infringement and invalidity as to each of the Patents-in-Suit.  NETGEAR seeks judgment under the patent laws of the United States, 35 U.S.C. § 101, et seq., and the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.

### The Parties

56.   NETGEAR is a Delaware corporation, with its principal place of business located at 4500 Great America Parkway, Santa Clara, California.  NETGEAR has been a worldwide provider of technologically advanced, branded networking products since 1996.  NETGEAR's mission is to be the preferred customer-driven provider of innovative networking solutions for small businesses and homes..

57.   Upon information and belief, RUCKUS is a Delaware corporation that has its principal place of business in Sunnyvale, California.

### Jurisdiction and Venue

58.   This Court has subject matter jurisdiction over this counterclaim pursuant to 28 U.S.C. §§ 1331 and 1338(a), and the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.

59.   RUCKUS has consented to personal jurisdiction by pursuing an action for patent infringement in this judicial district, as set forth in RUCKUS' First Amended Complaint. RUCKUS also maintains its headquarters and principal place of business in this District.

60.   Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391(b), (c) and 1400(b).

### First Counterclaim for Relief
### Declaratory Judgment of Non-Infringement of the '562 Patent

61.   NETGEAR has not infringed and does not currently infringe, either directly or indirectly, any claim of the '562 patent.

**Second Counterclaim for Relief**
**Declaratory Judgment of Invalidity of the '562 Patent**

62. The '562 patent is invalid and unenforceable because it fails to satisfy the requirements of the Patent Act, 35 U.S.C. § 101, *et seq.*, including, without limitation, sections 101, 102, 103, and 112 thereof.

**Third Counterclaim for Relief**
**Declaratory Judgment of Prosecution History Estoppel Controlling the '562 Patent**

63. RUCKUS is estopped, based on statements, representations, and admissions made during prosecution of the patent applications resulting in the '562 patent, from asserting any interpretation of the claims of the '562 patent that would be broad enough to cover any of NETGEAR's products or services.

**Fourth Counterclaim for Relief**
**Declaratory Judgment of Non-Infringement of the '912 Patent**

64. NETGEAR has not infringed and does not currently infringe, either directly or indirectly, any valid claim of the '912 patent.

**Fifth Counterclaim for Relief**
**Declaratory Judgment of Invalidity of the '912 Patent**

65. The '912 patent is invalid and unenforceable because it fails to satisfy the requirements of the Patent Act, 35 U.S.C. § 101, *et seq.*, including, without limitation, sections 101, 102, 103, and 112 thereof.

**Sixth Counterclaim for Relief**
**Declaratory Judgment of Prosecution History Estoppel Controlling the '912 Patent**

66. RUCKUS is estopped, based on statements, representations, and admissions made during prosecution of the patent applications resulting in the '912 patent, from asserting any interpretation of the claims of the '912 patent that would be broad enough to cover any of NETGEAR's products or services.

**PRAYER FOR RELIEF**

WHEREFORE, NETGEAR respectfully requests that the Court enter judgment in NETGEAR's favor and against RUCKUS and provide NETGEAR the following relief:

1.  A declaration that NETGEAR has not infringed and is not infringing, either directly, indirectly, or otherwise, any valid claim of the '562 patent or the '912 patent;

2.  A declaration that the claims of the '562 patent and the '912 patent are invalid;

3.  A permanent injunction preventing RUCKUS, including their officers, agents, employees, and all persons acting in concert or participation with them, from charging that any of the patents-in-suit is infringed by NETGEAR;

4.  A declaration that this case is exceptional for purposes of 28 U.S.C. § 285;

5.  An award of reasonable attorney fees and costs to NETGEAR under, but not limited to, 28 U.S.C. § 285; and

6.  An award of any further relief that the Court deems just and proper.

## JURY DEMAND

NETGEAR hereby demands a trial by jury on all issues appropriately triable by a jury.

Dated: July 17, 2008                    FISH & RICHARDSON P.C.


                                        By: */s/ David M. Barkan*
                                             David M. Barkan

                                        Attorneys for Defendant and Counterclaimant
                                        NETGEAR, INC.

*Pursuant to General Order 45, section X.B., the filer hereby attests that concurrence in the filing of the document has been obtained from each signatory above.*